UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

Eugene John DeMarco

Case No.: 22-72630-ast
Chapter 7

Debtor.
---------------------------------------------------------X

**DECISION AND ORDER DENYING**
**DEBTOR'S HOMESTEAD EXEMPTION**

This is a case of first impression. Pending before the Court is the motion (the "Motion") of Christoffel Johannes Vilijoen (the "Foreign Representative") objecting to the debtor's homestead exemption [Dkt. No.55]. The debtor, Eugene John DeMarco ("DeMarco"), claims a homestead exemption under New York State law in real property located in New York. The crux of this dispute is that DeMarco was a permanent New Zealand resident and not a United States resident on the Petition Date (defined below). In fact, DeMarco had been a permanent New Zealand resident for at least 14 years prior thereto. Moreover, DeMarco had no legitimate intentions of leaving New Zealand and returning to New York prior to the Petition Date, notwithstanding his incarceration in New Zealand with severe restrictions on his ability to travel to the United States for approximately two years prior to the Petition Date. For the reasons set forth below, the Court hereby grants the Motion, and denies DeMarco's New York homestead exemption claim.

**JURISDICTION**

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a) and (e), and 157(b)(2)(A) and (B), and the Standing Orders of Reference in effect in the Eastern District

of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A. Procedural History**

On September 29, 2022 (the "Petition Date"), the Foreign Representative commenced an involuntary chapter 7 case against DeMarco pursuant to 11 U.S.C § 303 (the "Involuntary Case"), by the filing and service of a summons and involuntary chapter 7 petition [Dkt. No. 1]. The Foreign Representative is the Deputy Assignee in Bankruptcy of DeMarco's estate under New Zealand law. DeMarco's estate includes his interest in real property located at 117 Burr Road, East Northport, NY 11731 (the "Property"). Anthony Pullman is the Official Assignee (the "Official Assignee") in Bankruptcy of the Property under New Zealand law. The Foreign Representative was acting in his capacity as the Deputy Assignee when filing the involuntary petition. [1] No challenge was made to the filing of the Involuntary Case.

On or about November 1, DeMarco consented to the entry of a chapter 7 order for relief. *Stipulation and Order for Entry of Chapter 7 Order for Relief and Granting Related Relief*, Dkt. No. 17. On November 2, the Court so-ordered that stipulation and entered the chapter 7 order for relief. *So-Ordered Stipulation and Order for Entry of Chapter 7 Order for Relief and Granting Related Relief*, Dkt. No. 18.

On November 16, DeMarco filed his schedules and statement of financial affairs ("SOFA") [Dkt. No. 22]. On Schedule A/B [Dkt. No. 22], DeMarco lists having a life estate interest in the

[1] The Foreign Representative has served as a Deputy Assignee since May 21, 2009. *Decl. of Christoffel Johannes Vilijoen, in His Capacity as Foreign Representative and Deputy Assignee in Bankruptcy of the Property of Eugene John DeMarco, in Supp. of Mot. for Immediate Appointment of Trustee Pursuant to 11 U.S.C. §§ 105 and 303(G)* ("Vilijoen Decl."), ¶ 7(a)-(c), Ex. B, Dkt. No. 2-2. In or around February 2022, the Foreign Representative took over the administration of DeMarco's bankruptcy estate from Vethashni Naicker, conferring upon him the duty and authority to administer the assets of DeMarco's estate and liquidate such assets for the benefit of creditors. *Id.*, ¶ 7(c).

Property. On Schedule C [Dkt. No. 22], DeMarco claims that he is entitled to a homestead exemption in the amount of $179,975.00 pursuant to section 522(b)(3) of title 11 of the United States Code (the "Bankruptcy Code") and NY CPLR section 5206 regarding the Property (the "Homestead Exemption"). On his SOFA [Dkt. No. 22], DeMarco admits having lived in New Zealand from 2007 through September 22, 2022.

On April 19, 2023, the Foreign Representative filed the Motion [Dkt. No. 55] through New York counsel.

On July 5, 2023, DeMarco filed an objection to the Motion [Dkt. No. 63].

On August 21, 2023, the Foreign Representative filed a Declaration in Further Support of the Motion [Dkt. No. 69].

On August 23, the Court held a hearing on the Motion and scheduled an evidentiary hearing to take place on October 25.

On October 18, the Foreign Representative filed a Brief and Further Declaration in Support of the Motion [Dkt. Nos. 82 and 83].

On October 23, the parties jointly filed a Statement of Undisputed Facts (the "Stipulated Facts") [Dkt. No. 86].

On October 25, the Court held an evidentiary hearing on the Motion (the "Evidentiary Hearing"). DeMarco testified live from the courtroom. The Foreign Representative appeared virtually from New Zealand, which is his country of residence.

After the Evidentiary Hearing, the Court marked the Motion as submitted and permitted but did not require the parties to submit supplemental briefing by November 15.

On November 15, the Foreign Representative filed his supplemental brief and declaration [Dkt. Nos. 92, 93]. DeMarco did not file any supplemental briefs.

**B. Undisputed Factual Background**

DeMarco was born in New York on February 19, 1962, and is a citizen of the United States. Stipulated Facts, ¶ 1, Dkt. No. 86.

In 2001, DeMarco visited New Zealand for the first time. *Id.*, ¶3.

On December 18, 2002, Debtor was issued a New Zealand work permit. *Id.*, ¶4.

In May 2008, Debtor was issued a New Zealand Permanent Resident Visa, and thereby officially became a permanent resident of New Zealand. *Id.*, ¶ 5. There is nothing in the Stipulated Facts or trial evidence which would indicate that DeMarco disclaimed his United States citizenship.

Since becoming a permanent resident of New Zealand, DeMarco has departed New Zealand on 16 occasions. *Id.*, ¶ 7. The first 15 of DeMarco's departures from New Zealand were return trips of less than two months, the last of which was between May 15 and June 7, 2019. *Id.*

On December 5, 2019, DeMarco was sentenced to two years and five months' imprisonment in New Zealand on four charges of theft by a person in a special relationship and two charges of obtaining by deception. *Id.*, ¶ 9. The charges arose from conduct in 2016 and 2017 concerning the theft of an aircraft and obtaining a bank loan by deception.[2] *Id.*

On September 30, 2020, DeMarco was released on parole with standard and special conditions that were to apply until November 3, 2022. *Id.*, ¶ 10. The parole conditions included

[2] As explained by the Foreign Representative, DeMarco was convicted for, *inter alia*, (a) purporting to sell aircrafts in his capacity as senior employee of The Vintage Aviator Limited ("TVAL"), but keeping the proceeds for himself, and (b) deceptively obtaining a bank loan by giving security to a New Zealand bank over an aircraft, which was being held by DeMarco's company on trust for DeMarco's friend and client of TVAL, Oliver Wulff. TVAL is under the directorship of Sir Peter Jackson (director of *The Lord of the Rings* trilogy) and Dame Fran Walsh (co-writer and producer of *The Lord of the Rings* trilogy), who commenced a civil proceeding against DeMarco concerning his misappropriation of TVAL's assets and dishonesty. *See* Viljoen Decl., ¶¶ 9(b)-(c), 10(a)(b), 11(a)-(c), Dkt. No. 2-2; *see also* Viljoen Decl., Ex. O (Affd. of Sir Peter Jackson), Dkt. Nos. 2-6—2-9.

a requirement that DeMarco obtain prior approval from the Department of Corrections of New Zealand before he could leave or travel out of New Zealand. *Id.*, ¶ 11.

On July 14, 2021, DeMarco was adjudicated bankrupt by order of the High Court of New Zealand. *Id.*, ¶ 14.

On August 22, 2022, DeMarco was arrested at Auckland Airport after triggering a border control alert as he was attempting to travel to New York in breach of his parole conditions. *Id.*, ¶ 15. As a term of bail, DeMarco's passport was surrendered to the New Zealand District Court. *Id.*, ¶ 16.

On September 12, the New Zealand Parole Board granted an application that DeMarco made for discharge of his standard and special parole conditions. *Id.*, ¶ 17. Following the discharge of his parole conditions, the charges for breaching his parole were withdrawn and his passport was returned to him. *Id.*, ¶ 18.

On September 20, DeMarco sent an email requesting permission from the Official Assignee to travel to New York. *Id.*, ¶ 20. In his email, DeMarco wrote to the Official Assignee that "I make this request on compassionate grounds and it would only be for a temporary absence from New Zealand." *Id.* Attached to the email was an application that stated: "I, Eugene Demarco, request consent to leave New Zealand temporarily to visit my dying mother in New York." *Id.*, ¶ 20(a). In that application, he listed his current address as 13 Fortification Road Karaka Bays, Wellington, and stated that the intended date of departure was "as soon as possible", the departure was "temporary", and his intended date of return was "October 18, 2022." *Id.*, ¶ 20(b)-(c).

On September 22, DeMarco departed New Zealand on a flight to New York, prior to receiving the required approval from the Official Assignee. *Id.*, ¶ 22.

On October 18, 2022, DeMarco appeared before this Court at a status hearing on the Involuntary Case and made the following trilogy of statements to the Court:

(a) he was scheduled to return to New Zealand in late October 2022.

(b) if a trial on the Involuntary Case took place in November 2022, all witnesses, including himself, would be in New Zealand.

(c) an afternoon trial would be preferable if the Court set a November 9, 2022 trial date as DeMarco intended to be back in New Zealand, and there is a substantial time difference between New York and New Zealand.

*Id.*, ¶ 29.

## DISCUSSION

### I. Legal Standard for Homestead Exemption

Pursuant to Section 522 of the Bankruptcy Code, an individual debtor may exempt certain assets from property of the bankruptcy estate. An individual debtor may elect to claim either (a) the federal exemptions pursuant to 11 U.S.C. § 522(b)(2), unless the state "opts out" of the federal exemptions, or (b) the applicable state exemptions pursuant to 11 U.S.C. § 522(b)(3). New York is no longer an "opt out" state.

Under Section 522(b)(3)(A), a debtor may claim the homestead exemption of the state of his domicile on the date he filed his bankruptcy petition only if he has resided in that state for two years, or 730 days, prior to the petition date. 11 U.S.C. § 522(b)(3)(A). If a debtor has not resided in his current state of domicile for at least 730 days, then the debtor can only assert the homestead exemption available under the laws of the state in which he resided for the greater part of the six months (180 days) prior to the 730-day period before the petition date. *Id.*

Section 522(b)(3) of the Bankruptcy Code "addresses the concern raised by the 'wandering debtor' — the debtor who changes her residence before filing for bankruptcy in order to take

advantage of more favorable exemptions offered in the state she claims as her domicile as of the bankruptcy filing date." *In re Ward*, 595 B.R. 127, 144-145 (Bankr. E.D.N.Y. 2018). "This section governs which state law applies and will serve to preclude a debtor from taking advantage of a state's more generous exemptions." *Id.*

While the term domicile is not defined in the Bankruptcy Code, a "[d]omicile is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). Under New York law, the following dual elements must be satisfied to claim a homestead exemption: (1) "actual physical occupancy of the residence on a regular basis", meaning that the residence is "occupied by the debtor on a more regular basis than any other residence", and (2) "intent to reside there permanently." *See In re Rasmussen,* No. 09-72069-ast, 2010 WL 2889558, **2-3 (Bankr. E.D.N.Y. July 20, 2010), *aff'd* 456 B.R. 1 (E.D.N.Y. 2011); *see also In re Moulteria*, 398 B.R. 501, 505 (Bankr. E.D.N.Y. 2008) (finding that Courts have interpreted CPLR § 5206(a) to require "actual physical occupancy on a regular basis" and "intent to reside there permanently"). "When a person has actually removed to another place, which is his fixed present residence, with an intention of remaining there for an indefinite time, it becomes his place of domicile, notwithstanding he may have a floating intention to return to his former domicile at some future and indefinite time." *McKone v. State Tax Comm'n of State*, 111 A.D.2d 1051, 1053 (3d Dep't 1985) (citing 28 C.J.S. *Domicile* § 11, at 19 (1941)); *see also In re Estate of Newcomb*, 192 N.Y. 238, 250 (1908) ("In order to acquire a new domicile there must be a union of residence and intention.").

"Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of an intent to make it one's home, of course cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227-28 (S.D.N.Y. 1991); *see also Dist. Of Columbia v. Murphy*, 314 U.S. 441, 456, (1941) ("One's testimony with regard to his intention is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts.").

The question of an individual's domicile may be a mixed question of fact and law. *Matter of Brunner's Estate*, 41 N.Y.2d 917, 918 (1977). "Indeed, it has been said that it is a question of fact rather than law, and it frequently depends upon a variety of circumstances, which differ as widely as the peculiarities of individuals." *Id.* (internal quotations omitted). The New York Court of Appeals in *Matter of Brunner's Estate* conducted a fact-specific inquiry to determine whether the testator's domicile was France or New York at the time of his death. The Court of Appeals acknowledged that testator was born and spent most of his life in New York, and even after moving to France, reserved a life estate in an apartment located at his former business in New York and would occasionally stay at that apartment for short periods of time when visiting New York. *Id.* Nevertheless, the Court of Appeals recognized that the testator always returned to his family in France. *Id.* Despite informing the United States Internal Revenue Service that New York was his "permanent residence" even after moving to France, the testator gave a contrary statement to the New York State tax authorities. *Id.* The Court of Appeals determined that the evidence showed that the testator had established his domicile in France and intended to remain there indefinitely. *Id.*; *see also In re Benjamin's Estate*, 27 N.Y.S.2d 948, 960 (Surr. Ct. New York County 1941)

("The intention required for the acquisition of a domicil[e] of choice is an intention to make a home in fact, and not an intention to acquire a domicil[e].").

## II. Analysis

"When determining the allowance of an exemption, a court must consider the circumstances as they existed on the petition date." *Rasmussen*, 2010 WL 2889558, at *2 (citing *In re Moulteria*, 398 B.R. 501, 505 (Bankr. E.D.N.Y. 2008) and *In re Scott*, 233 B.R. 32, 40 (Bankr. N.D.N.Y. 1998)). The issue here is not whether DeMarco may elect a New York exemption over a different state's exemption. Rather, the issue is whether DeMarco was even a United States resident with a United States domicile at the Property during any portion of the 730 days prior to the Petition Date, or for 180 days prior thereto.

There is no evidence that DeMarco lived at the Property for two years prior to the Petition Date or for at least 180 days prior thereto. In fact, there is no evidence that DeMarco resided at the Property for any period of time whatsoever. DeMarco was undisputedly voluntarily residing in New Zealand as a permanent resident since May 2008, and throughout his incarceration in 2019, and was not even physically present in New York until one week prior to the filing of the Involuntary Case. Stipulated Facts, ¶¶ 5, 22, Dkt. No. 86. Moreover, since DeMarco received permanent residence in New Zealand in May 2008, he has departed New Zealand on only 16 occasions: the first 15 departures were return trips of less than two months (i.e., DeMarco would not have been present in New York for more than 60 days during those trips), and the last time took place between May 5 and June 7, 2019 (more than three years before the Petition Date). *Id.*, ¶ 7, Dkt. No. 86.

While DeMarco does not dispute that he was not physically present in New York or at the Property for the 730 days prior to the Petition Date, DeMarco argues that he should be entitled to

the New York State exemption because his presence in New Zealand was involuntary due to his 2019 incarceration and subsequent parole restrictions. *See Decl. of Eugene DeMarco* ("DeMarco Decl."), ¶ 7, Dkt. No. 63.

This Court has also considered DeMarco's New Zealand incarceration. Under New York law, "[a] prisoner is presumed to be citizen of the state where he was domiciled before he was incarcerated, …." *Philippeaux v. Entin*, No. 19-CV-2205 (RA), 2020 WL 1878114, *2 (S.D.N.Y. Jan. 13, 2020). Here, the evidence demonstrates that DeMarco voluntarily established his domicile in New Zealand and intended to remain there indefinitely long before he was incarcerated. There is no evidence that had DeMarco not been incarcerated, he would have left New Zealand to reside at the Property and would have intended to remain there for an indefinite time. Having lived in New Zealand for almost two decades of his own volition, it seems clear that DeMarco had abandoned all intentions of maintaining a domicile in New York. *In re Apergis*, 539 B.R. at 28 ("Genuine questions of intent may arise where a debtor's actual occupancy is dubious, or in some way insufficient to show that a property is being used as a primary residence."); *Dawson v. Krolikowski*, 530 N.Y.S.2d 931, 937 (Sup. Ct. Monroe County 1988) ("[A] debtor's lack of occupancy for any other reason, not specified in CPLR 5206, does not serve to preserve a debtor's Homestead Exemption.").

The Court does not find DeMarco's contention of his intent to return to New York to be credible. Nor does the Court find the declaration of DeMarco's girlfriend, Alexandra Murcott, to that effect credible. *Decl. of Direct Testimony of Alexandra Murcott*, Dkt. No. 81. Significantly, the record is devoid of any objective facts or evidence which corroborate DeMarco's subjective statements.

During the Evidentiary Hearing, DeMarco testified that as of September 22, 2022, he was only supposed to be in New York temporarily and intended to return to New Zealand. Suddenly, DeMarco changed his mind on the flight over to the United States and decided not to return to New Zealand. This stands in stark contrast to representations made by DeMarco to this Court on October 6, when he confirmed to the Court that he had a return ticket to New Zealand scheduled for October 22. Further, at the hearing held on October 18, DeMarco informed the Court that he was scheduled to return to New Zealand in late October, and that the trial could take place virtually in November when he was back in New Zealand.

Also contradictory to DeMarco's purported intent to remain in New York are the statements set forth on DeMarco's application ("Application") for permission to leave New Zealand, in which DeMarco wrote "I, Eugene Demarco, request consent to leave New Zealand temporarily to visit my dying mother in New York"; that his stay would not be permanent, and he intended to return to New Zealand on October 18, 2022. *See Bankrupt's application for Assignee's consent to leave New Zealand,* Dkt. No. 84, Ex. I.

Furthermore, in an email DeMarco sent Carla Freda (Lead Insolvency Officer, Insolvency and Trustee Service at Ministry of Business , Innovation & Employment) at the Official Assignee's office on September 20, 2022 (the "September 20 Email") regarding his Application, DeMarco emphasized the urgency of his "request for permission to travel" explaining that the request was being made "on compassionate grounds and it would only be for a temporary absence from New Zealand.". *See September 20, 2022 E-mail*, Dkt. No. 84, Ex. I. DeMarco mentioned that his "mother lives in New York in the home she has resided in for the last fifty-five years" and that he "ha[d] not seen [his] mother in over five years." *Id.* In a subsequent email to Carla Freda on September 22, DeMarco reiterated that he "ha[d] not been able to see [his mother] in over five

years....” *See September 22, 2022 E-Mail*, Dkt. No. 84, Ex. I. These statements make clear that DeMarco had not even stepped foot in the Property since at least sometime in 2017.

Thus, DeMarco’s testimony of an epiphany of an intent to reside permanently in New York while airborne on September 22, 2022 is encircled by contrary and numerous representations made to this Court and New Zealand officials. DeMarco has failed to credibly establish any intention of permanently residing at the Property as his domicile on or before the Petition Date.

**CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED**, that pursuant to 11 U.S.C. § 522(b)(3), the Motion is granted; and it is further

**ORDERED**, that DeMarco’s Homestead Exemption is denied; and it is further

**ORDERED,** that all other relief requested in the Motion is denied.

Dated: May 17, 2024
Central Islip, New York




Alan S. Trust
Chief United States Bankruptcy Judge